UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEREMY PINSON, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 3:13-CV-2098-D |
| | § | |
| JOSE SANTANA, ET AL., | § | |
| | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred Defendants' Motion to Dismiss or Alternatively, Motion for Summary Judgment [D.E. 137] to the United States Magistrate Judge for recommendation. *See* Order of Reference [D.E. 143]. For the following reasons, the undersigned recommends that the motion be granted in part and denied in part.

### BACKGROUND

Plaintiff Jeremy Pinson ("Pinson") is currently incarcerated and serving time on a 240 month sentence. Second Am. Compl. [D.E. 125 at 2]. Pinson was placed at the United States Penitentiary, Administrative Maximum Facility ("ADX"), a federal supermax prison located in Colorado from February 25, 2011 until October 8, 2014. *Id.* [D.E. at 7]; Defs.' Br. [D.E. 138 at 16 n.1]. Before he arrived at ADX, Pinson spent "3[,]108 days in segregation or solitary confinement . . . [and] was deeply disturbed by the time [he] arrived" at ADX. Second Am. Compl. [D.E. 125 at 7]. During his time at ADX, Pinson states that he was required to spend twenty-two to twenty-four hours a day in his cell with only limited opportunities to leave for medical treatment, social and legal visits,

1

recreation, and visiting the law library. *Id.* [D.E. at 8]. Pinson claims that shortly after he arrived at ADX he "began to unravel . . . with increasing symptoms of psychiatric distress including depression, anxiety, suicidal ideation, irritability, [and] mood swings." *Id.* [D.E. at 12]. In 2014, Pinson was diagnosed as "actively psychotic, schizoaffective, autistic, and gender dysphoric." *Id.* [D.E. at 13]. Pinson claims that solitary confinement is harmful to prisoners and that the Bureau of Prisons ("BOP"), Jose Santana ("Santana"), Chief of the BOP Designation and Sentence Computation Center, and Charles Samuels Jr. ("Samuels"), Director of the BOP, all knew "that extended periods of confinement in isolation can be psychologically damaging to any prisoner and can be particularly harmful to individuals with pre-existing mental illnesses." *Id.* [D.E. at 10]. Pinson asserts that his "mental state in solitary confinement continues to deteriorate." *Id.* [D.E. at 13]. Pinson claims that he has attempted to bring the conditions of prisoner on prisoner violence to light through engaging congress, the media, and in litigation. *Id.* [D.E. at 13-14]. Because of his actions, Pinson alleges that the BOP and BOP Officials Santana, Samuels, and Catricia Howard ("Howard") (collectively "Defendants") have been embarrassed and, as a result, used their positions to retaliate against him. *Id.* [D.E. at 13,16].

Based on the lack of treatment in ADX and the retaliation, Pinson brings two major causes of action with eight separate sub-causes of action. *See id.* [D.E. at 18]. His first set of claims are for the violation of his Eighth Amendment right against cruel and unusual punishment by placing him in solitary confinement without providing him treatment for his illnesses or proper training for ADX personnel. *Id.* His second set of claims allege his First Amendment rights were violated when he was transferred to ADX and when his requests for transfer out of ADX and solitary confinement were denied. *Id.* [D.E. at 18].

# LEGAL STANDARDS

## Motion to Dismiss

To survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). In ruling on the motion to dismiss, the court may consider documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, and matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts . . . which were matters of public record directly relevant to the issue at hand.").

## Considering Matters Outside the Pleadings

The Federal Rules of Civil Procedure provide that if a motion to dismiss is filed under Rule 12(b)(6) and "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the

3

pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Defendants have attached a significant amount of Pinson's medical records to their motion to dismiss. *See* App. In Supp. of Defs.' Mot. [D.E. 140-1 at 4-900]. Pinson refers to these medical records implicitly or explicitly throughout his complaint. *See* Second Am Compl. [D.E. 125 at 2, 4-7, 12-13, 16-17]. Furthermore, medical treatment, or lack there of, is central to several of Pinson's claims. *See id.* [D.E. at 18]. Therefore, the attached medical records that Pinson refers to are considered part of the pleadings. *See Causey*, 394 F.3d at 288.

## ANALYSIS

### EIGHT AMENDMENT CLAIMS

#### Sub-Claims A, B, and E

The federal government is constitutionally obligated "to provide medical care for those it punishes with incarceration." *Spry v. Chapman*, No. 4:08-CV-459-Y, 2011 WL 1807858, at *5 (N.D. Tex. May 12, 2011). "[T]o prevail on a claim that a prison official violated [an inmate's] Eighth Amendment right" the "inmate must satisfy two requirements." *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). "First, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Second, the inmate must show that the prison official had a culpable state of mind–that the official was deliberately indifferent to inmate health or safety." *Id.* Unsuccessful medical treatment, disagreements over medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference. *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). The decision not to provide additional medical treatment "is a classic example of a matter for medical judgment." *Gobert*

4

*v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). However, "a prison inmate can demonstrate an Eighth Amendment violation by showing that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) (internal quotations omitted).

Here, Pinson's sub-claims A, B, and E cannot survive Defendants' motion to dismiss because Pinson does not plead "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. Pinson alleges that Defendants had knowledge of his circumstances, but concedes Defendants were not indifferent to his circumstances. *See* Second Am. Compl.[D.E. 125 at 3, 5, 9, 10, 12]. In his amended complaint, Pinson states that he interacted with "onsite doctors," "was prescribed medications," received treatment for "two serious suicide attempts that required outside hospitalizations," and Defendants "Samuels and Santana sent [Pinson] to a medical facility" *Id.* at 12-13 [D.E. 125]. All of these concessions rebut Pinson's claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Pinson further complains that particular treatment options were not provided to him. Second Am. Compl. 9, 12, 13 [D.E. 125]. However, the decision not to provide Pinson with further medical treatments is "a matter for medical judgment." *See Gobert*, 463 F.3d at 346. Simply because Pinson "disagrees with the course of his treatment or . . . that he should have received further treatment" does not mean Pinson has "raise[d] a claim of deliberate indifference." *See Richie v. Univ. of Tex. Med. Branch Hosp. Galveston*, 581 F. App'x.

405, 406 (5th Cir. 2014) (citing *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Because Pinson pleads facts that conflict with his allegations, he fails to raise his right to relief beyond the speculative level. *See Twombly*, 550 U.S. at 555. For these reasons the Court recommends that sub-claims A, B, and E all be dismissed.

### Sub-Claim C

Pinson alleges that Samuels and the BOP exhibited deliberate indifference by "fail[ing] to train, supervise, [and] discipline ADX personnel." Second Am. Compl. [D.E. 125 at 18]. He claims that the focus of ADX was punishment rather than control. *Id.* [D.E. at 9]. He further alleges that the BOP allowed the correctional staff to physically abuse "unruly or merely assertive prisoners to create fear and to demonstrate the dominance of the staff." *Id.* [D.E. at 9]. According to Pinson this was all done "in an effort to instill fear and punish ADX inmates." *Id.* [D.E. at 9].

To establish liability against a supervisor for failure to train or supervise, an inmate must show that: "(1) the [supervisor] failed to supervise or train the [subordinate]; (2) a casual connection existed between the failure to supervise or train and the violation of the plaintiff's rights; (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). Furthermore, for liability to attach, "a plaintiff must allege with specificity how a particular training program is defective." *Id.* at 293.

Here, Pinson's claim cannot survive the Defendant's motion to dismiss. Assuming that Pinson has pleaded enough facts regarding the first prong of the supervisor liability test, Pinson's claim fails to plead any facts related to prongs two and three. *See id.* at 292. Pinson does not allege a casual connection between any of the correctional staff's acts and violations of *his* personal rights.

6

*See id.* Instead, he makes generalized statements about meals being withheld, prisoner mail being thrown in the trash, unwarranted physical force or chemical agents, or the denial of medical treatment. Second Am. Compl. [D.E. 125 at 9]. Along with the withholding of medical treatment already discussed, Pinson does not plead any facts indicating that the correctional staff directed any of these acts at *him* or in violation of *his* rights. *See Roberts*, 397 F.3d at 292. Furthermore, Pinson does not plead any facts that indicate that any lack of training or supervision equated to indifference of *his* constitutional rights. *Id.* at 293. Because he has not pleaded with enough "factual content [to] allow[] the court to draw the reasonable inference that [Defendants] [are] liable for the alleged misconduct," his claim lacks facial plausibility. *See Iqbal*, 556 U.S. 678. Since no facial plausibility exists, Pinson's claim cannot rise above the speculative level and should be dismissed. *See Twombly*, 550 U.S. 555. Therefore, the Court recommends that this claim be dismissed.

### Bureau of Prisons as a Defendant

Defendants move for all claims against BOP to be dismissed, arguing *Bivens* claims may only be brought against individuals, not governmental agencies. Br. Mot. Dismiss [D.E. 138 at 10]. Pinson counters that the BOP is not being sued under *Bivens*, but 28 U.S.C. § 1331 for injunctive and declaratory relief. Pl.'s Resp. [D.E. 147 at 4]. Pinson's complaint asserts only one claim against the BOP–Claim One Sub-Claim C. Second Am. Compl. [D.E. 125 at 18]. Because it is recommended that this claim against Samuels and the BOP be dismissed, the Court does not reach the issue of whether the BOP is a proper defendant for this action.

### Sub-Claim D

Pinson claims that Defendants exhibited deliberate indifference in continuing to keep him in solitary confinement post-ADX. Second Am. Compl. [D.E. 125 at 18]. Placing an inmate in

"lockdown" or "administrative segregation," "absent extraordinary circumstances . . .will never be a ground for a constitutional claim." Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008). "[G]enerally speaking, a prisoner has no liberty interest in his custodial classification." *Id.* The Fifth Circuit "has repeatedly affirmed that prison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order." *Id.* (internal quotations omitted).

Pinson's Sub-Claim D should be dismissed because he does not plead any facts regarding his classification after being transferred from ADX beyond stating that he is currently in solitary confinement. *See* Second Am. Compl. [D.E. 125 at 15]. Because he fails to plead any facts relating to his post-ADX classification, he has failed to plead that extraordinary circumstances exist. *See Hernandez*, 522 F.3d at 563. This lack of factual content prevents the Court from drawing any reasonable inferences that the Defendants are liable for any of the conduct Pinson alleges. *See Iqbal*, 556 U.S. at 678. Therefore, Pinson cannot raise his right to relief beyond a speculative level, and the claim should be dismissed. *See Twombly*, 550 U.S. at 555. For these reasons, the Court recommends this claim be dismissed.

## FIRST AMENDMENT CLAIMS

Pinson alleges his First Amendment rights were violated in three different ways: (1) his transfer to ADX was retaliatory; (2) the decision not to transfer him out of ADX was retaliatory; and (3) after removing him from ADX, keeping him in solitary confinement was retaliatory. Second Am. Compl. 16 [D.E. 125]. Pinson claims to be very active in drawing media and congressional attention to the living conditions of inmates in the federal prison system. *See* Second Am. Compl. [D.E. 125 at 14-17]. He further asserts that he is "highly disfavored within the BOP because [he] is litigious

and frequently embarrasses the BOP." Second Am. Compl. [D.E. 125 at 13]. Pinson also alleges that Defendants Howard, Samuels, and Santana were all personally involved in the decision-making process on whether or not to allow Pinson to transfer out of ADX. Second Am. Compl. [D.E. 125 at 17]. Pinson goes as far as to allege that Samuels and Santana ordered Dr. Jennifer Coulter to reduce his care level to prevent his medical transfer from ADX. Second Am. Compl. [D.E. 125 at 17]. Pinson complains that because of his litigiousness, he has been placed and remains in solitary confinement on a continuing basis. Second Am. Compl. [D.E. 125 at 15]. According to Pinson's Second Amended Complaint, he would only be allowed to transfer from ADX if he "terminated all lawsuits and ceased contact with representative of the news media." Second Am. Compl. 17 [D.E. 125].

The necessary elements of a valid retaliation claim require the prisoner to state "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). An inmate "must allege more than his personal belief that he is the victim of retaliation; that is, mere conclusory allegations of retaliation are not sufficient to state a claim for retaliation." *Lerma v. Fed. Bureau of Prisons*, No. 1:01-CV-232-C 2003, WL 22121092, at *7 (N.D. Tex. Sept. 12, 2003). Further, the "inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (internal quotations omitted); *Ward v. Fisher*, 616 F. App'x. 680, 684 (5th Cir. 2015). For example, in the *Ward* case, the plaintiff filed a grievance over medical care and was told that if he persisted in seeking treatment, he would be transferred to another unit. *Ward*, 616 F. App'x. at 684.

The Fifth Circuit requires inmates to allege more than just *de minimis* retaliatory adverse acts to proceed with a retaliation claim. *Morris v. Powell*, 449 F.3d 682, 684-85 (5th Cir. 2006). A claim reaches beyond the *de minimis* threshold if the retaliatory adverse act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686. However, a claim may remain *de minimis* even if it has retaliatory motive. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). The *de minimis* "threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory actions by prison officials." *Id.*

Here, Pinson has satisfied his burden to plead enough facts to state a plausible claim. *See Twombly*, 550 U.S. at 570. First, Pinson has alleged the Defendants violated his First Amendment right. *Bibbs*, 541 F.3d at 270. He further alleges that Defendants *intended* to retaliate against him for the embarrassment he caused them to experience through litigation and media exposure. *See id.* Third, he alleges that his transfer request denials by the Defendants were actual retaliatory adverse acts because his transfer would have been granted, had he dropped all litigation and ceased contact with the media. *See id.* Finally, Pinson alleges a chronology for the causation element. *See id.* His chronology is similar to that of the *Ward* case, when he alleges Defendants would only allow him to transfer from ADX if he ceased contact with media sources and dropped all litigation against the Defendants. *See Ward*, 616 F. App'x. at 684. Furthermore, Pinson alleges more than just his personal belief that the Defendants retaliated against him; he pleads facts that indicate he was told that the Defendants prevented his transfer. *See Lerma*, WL 22121092, at *7.

Pinson's claims goes beyond the *de minimis* threshold because the denial of transfers would "deter[] a person of ordinary firmness from further exercising his constitutional rights." *See Morris*, 449 F.3d at 686. Being qualified to transfer out of solitary confinement, but being indefinitely denied

transfer, solely on the basis of retaliation is similar imposing restrictions on an inmate for filing a complaint. *See Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (holding that twenty-seven days of commissary and cell restrictions were alleged adverse acts). As previously discussed, the Fifth Circuit gives prison officials the greatest deference in prisoner classification in particular situations. *See Hernandez*, 522 F.3d at 563. However, Pinson alleges his classification is not related to security or preserving order, but solely based upon retaliation because of his contact with the media and for the litigation he has initiated. *See* Second Am. Compl. [D.E. 125 at 17]. Because, Pinson has pleaded enough facts to state a claim that is plausible and has done so with enough specificity to raise his right to relief beyond the speculative level, Defendants' motion should be denied. *See Twombly*, 550 U.S. at 570, 555. Therefore, the Court recommends that Defendant's motion to be dismissed be denied regarding all of Pinson's First Amendment claims.

## RECOMMENDATION

For the above stated reasons, the Court recommends that Defendants' motion to dismiss be granted in regard to Pinson's Eighth Amendment claims and denied in regard to his First Amendment claims.

SO RECOMMENDED, November 23, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).